STATE of South Dakota, Plaintiff
and Respondent,

v.

John GLIDDEN, Defendant
and Appellant.

No. 11786.

Supreme Court of South Dakota.

Nov. 12, 1976.

Steven L. Zinter, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Alan F. Glover of Denholm, Glover & Aho, Brookings, for defendant and appellant.

WOLLMAN, Justice.

Defendant was found guilty by a jury on counts of third degree burglary, SDCL 22–32–9; grand larceny, 22–37–1 and 22–37–2; and possession of burglar's tools, SDCL 22–32–17. Defendant contends on appeal that the trial court erred in failing to suppress certain evidence seized pursuant to an allegedly defective search warrant. We conclude that the evidence in question should have been suppressed, and we reverse the conviction and remand the case for new trial.

During the weekend of February 15–17, 1975, several rooms were burglarized in Pierson Hall, a dormitory on the campus of South Dakota State University. Taken from the rooms were food coupon books and a calculator. On March 19, 1975, the director of the State University police department applied to the circuit court for a search warrant. The body of the affidavit in support of the search warrant is set forth below.[1] The circuit court issued a search warrant based upon this affidavit; defendant and two other students were subse-

---

1. "HUGH KIRSH, being first duly sworn deposes and states as follows: that he is the Director of the South Dakota State University Police Department, and has been for the past 1½ years; that on or about the 4th of February, 1975, the theft of a calculator, described as a Texas Instruments Calculator, with Serial Number SR 11453261, was reported to the Police Department at South Dakota State University, said calculator having been stolen from room # 175 at Pierson Hall; that thereafter on the 17th and 18th of February, 1975, other thefts were reported to the Police Department at South Dakota State University, said thefts involving various items of personal property including two calculators and SAGA food coupon books, said property having been taken from rooms # 112, 113, 114, 115, 116, 117, and 118, Pierson Hall; that subsequent to the reported thefts, your Affiant has investigated said thefts in conjunction with the Sheriff's Office in and for the County of Brookings, State of South Dakota, and your Affiant and the Sheriff's Office have been advised by a reliable informant whom your Affiant believes and has reason to believe has knowledge regarding these thefts and the whereabouts of certain of the stolen property, said informant having advised your Affiant that he has seen certain of the items of stolen property and a sub-master key with markings WWSM at the following described premises, to-wit: 614 North Main Avenue, in the City of Brookings, County of Brookings and State of South Dakota;

And that as a result of all of the aforesaid, your Affiant respectfully asks that a Search Warrant be issued allowing the search of the above described premises situate at 614 North Main Avenue, in the City of Brookings, County of Brookings and State of South Dakota."

quently charged with the three offenses described above.

We agree with defendant's contention that when measured against the constitutional requirements set forth by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, the affidavit in question did not contain sufficient information to enable a neutral and detached magistrate to make a determination that probable cause existed for the issuance of a search warrant within the meaning of Article VI, § 11 of the south Dakota Constitution.[2] In *Aguilar,* the Supreme Court established a two-pronged standard for testing the credibility of an informant's tip: (1) the magistrate must be informed of some of the underlying circumstances from which the informant reached the conclusions conveyed in the tip to the affiant; and (2) the magistrate must be given some of the underlying circumstances from which it may be concluded that the informant is credible or that his information is reliable. See *State v. Haron,* S.D., 220 N.W.2d 829; *State v. Gerber,* S.D., 241 N.W.2d 720. Although the affidavit satisfies the first prong of the test, it founders on the second. Reading the affidavit in a commonsense and realistic fashion, *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *State v. Haron,* supra, and drawing every reasonable inference possible to support the determination of probable cause by the magistrate, cf. *State v. Gerber,* supra, sufficient facts and circumstances are still lacking to establish the credibility of the informant or the reliability of his information. The state contends that the affiant's personal knowledge set forth in the affidavit sufficiently corroborates the informant's tip so as to meet the requirements of the *Aguilar* test as interpreted by the Supreme Court in *Spinelli v. United States,* supra. In essence, the state argues that because Officer Kirsh knew that certain property had been stolen from certain dormitory rooms and because the informant told him that he had seen certain of the stolen property at the place in question, along with a sub-master key, the informant must have seen the stolen property and therefore the informant's statement must be true.[3] This, of course, is circular reasoning. Although it might establish that the informant gathered his information from personal observation, it does not establish that the informant was credible or that his information was reliable. As Mr. Justice Harlan pointed out in his dissent in *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723,

> "It is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information might have been fabricated. This is why our cases require that there be a reasonable basis for crediting the accuracy of the observation related in the tip. In short, the requirement that the magistrate independently assess the probable credibility of the informant does not vanish where the source of the tip indicates that, if true, it is trustworthy." 403 U.S. at 592, 91 S.Ct. at 2086, 29 L.Ed.2d at 739.

Although the informant testified at trial that he was a resident of the premises described in the affidavit and that he in fact had personally observed some of the stolen food coupons in defendant's room at that location, these facts do not appear in the affidavit, nor is there anything in the affidavit that would justify an inference by

---

**2.** Article VI, § 11 of the South Dakota Constitution provides that:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized."

**3.** The state emphasizes the fact that the informant stated that he had seen a sub-master key with markings WWSM at the place in question. Although it is true that at trial it was established that the sub-master key in fact fits the locks in Pierson Hall, that information does not appear in the affidavit, nor is there anything in the record to indicate that such information was presented to the circuit court before the warrant was issued.

the magistrate that the informant was a victim of or an eyewitness to the alleged thefts. Cf.*State v. Haron*, supra. Nor does the affidavit contain such a mass of detailed information that it could be reasonably inferred therefrom that the informant was a concerned citizen rather than a paid police informer, cf. *State v. Gerber*, supra, or a vengeful acquaintance of those occupying the premises to be searched.

In denying the motion to suppress, the circuit court observed that although the affidavit in question could have been substantially improved upon, it did meet the minimum requirements of *United States v. Harris*, supra.[4] We do not read the *Harris* case as so relaxing the *Aguilar-Spinelli* test that the affidavit in question passes constitutional muster. In any event, we believe that the *Aguilar-Spinelli* test, as interpreted by this court in *State v. Haron* and *State v. Gerber*, supra, must be met before probable cause can be said to exist for the issuing of a warrant under the provisions of Article VI, § 11 of the South Dakota Constitution.

Although we must hold that. the trial court erred in not suppressing the evidence seized pursuant to the warrant, we do not reach the question whether any of the evidence introduced against defendant had a source so independent of the warrant that it was free of the taint of the illegal search and seizure conducted thereunder. Although on the face of the record it appears that there may be such evidence, that is a matter to be determined in the first instance by the trial court upon retrial.

The judgment of conviction is reversed and the case is remanded to the circuit court.

DUNN, C. J., WINANS and COLER, JJ., and BRAITHWAITE, Circuit Judge, concur.

BRAITHWAITE, Circuit Judge, sitting as a member of the Court.

ZASTROW, J., not having been a member of the Court at the time this case was orally argued, did not participate.

---

4. Recognizing that law enforcement officers are not trained legal technicians well versed in the intricacies of the law of search and seizure, we have encouraged—nay, implored—our magistrates to ask applicants for search warrants those questions that will yield the information necessary to convert an affidavit of marginal factual sufficiency or outright insufficiency into one that will squarely meet the constitutional requirements of establishing probable cause. See *State v. Haron,* supra.