STATE of South Dakota, Plaintiff
and Respondent,

v.

Richard Dale CLARK, Jr., a/k/a Dick
Clark, Defendant and Appellant,

and

Michael Hastings, Defendant
and Appellant.

Nos. 12475, 12477.

Supreme Court of South Dakota.

Argued Jan. 24, 1979.

Decided July 5, 1979.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

John C. Quaintance and Steven R. Binger, Legal Intern, Sioux Falls, for defendant and appellant Clark.

A. Thomas Pokela, of Braithwaite & Cadwell, Sioux Falls, for defendant and appellant Hastings.

DUNN, Justice.

Defendants Richard Clark and Michael Hastings appeal from their convictions in the Circuit Court of the Second Judicial Circuit of maintaining a dwelling house where controlled drugs were used or stored and of possession of marijuana in violation of the Drugs and Substances Control Act embodied in SDCL 39–17.[1] We affirm.

The basic facts involved in this case were stipulated to by the parties, and there is no transcript of testimony before the trial court. It appears that both defendants resided in and paid the rent on a house located at 3726 North Seventh Avenue in Sioux Falls, South Dakota, for several months prior to the search of the house and their arrest as described below. On July 20, 1977, Willie Isonhood, Jr., was arrested by the Sioux Falls police on a felony drug charge unrelated to the present case. He informed officers that there was a place in northern Sioux Falls with the same address as the house the defendants rented where drugs were being stored and used. He also stated that he personally observed cocaine, marijuana, and amphetamines being used in the presence of one or both of the defendants at various times at that address during a period of four months. Isonhood purchased several grams of cocaine at the de-

fendants' address on July 19, 1977, in the presence of the defendants. He noticed additional cocaine in the defendants' refrigerator and at least a pound of marijuana in the desk drawer. Isonhood was also present at the defendants' residence on a Tuesday evening when a telephone call was made to an individual in Des Moines, Iowa, in the presence of both defendants. The content of the telephone conversation was that various drugs were being ordered from an unknown individual in Des Moines who was in the trucking business or was a truck driver and who was bringing the drugs to Sioux Falls the next afternoon or evening.

On the same date as Isonhood's arrest, July 20, 1977, a search warrant was issued upon a finding of probable cause by a magistrate. The defendants' rented house at 3726 North Seventh Avenue was subsequently searched by several officers. The search resulted in the seizure of suspected controlled substances from throughout the house. The seized items were sent to the State Chemistry Laboratory in Vermillion, South Dakota, for scientific testing purposes. Testing resulted in identification of 42.39 ounces of marijuana (genus cannabis), as well as cannabis residue, prepared cannabis oil (hash oil), and cocaine.

On July 27, 1977, a Minnehaha County grand jury handed down indictments for each of the defendants on five criminal counts. The trial court denied the defendants' motions to quash the indictments, to suppress the evidence seized, and to quash the search warrant. On January 26, 1978, the trial court consolidated the charges against each of the defendants so that they could be tried at the same time. The defendants each entered oral pleas of not guilty to the charges set forth in the indictments, and the case was submitted to the trial court on the stipulated facts as to the charges of possession of marijuana—more than one ounce—and maintaining a dwelling where controlled drugs were used or stored.[2] On February 10, 1978, the trial

---

1. Now embodied in SDCL 34–20B.

2. The remaining three counts in the indictments were subsequently dismissed on the state's motion.

court found each of the defendants guilty of both criminal charges and ordered a pre-sentence investigation as to each defendant. On April 14, 1978, the trial court sentenced each defendant to a total of two and one-half years in the state penitentiary.

On appeal, the defendants first contend that the trial court erred in denying their motions to suppress and in admitting the fruits of the search into evidence for the reason that the affidavit in support of the search warrant was insufficient to meet the requirements for a showing of probable cause.[3] In reviewing the affidavits, we must remember that the search warrant should not be invalidated by interpreting the affidavits in a hypertechnical manner; rather, the affidavit should be read as a whole and interpreted in a common-sense and realistic manner. *State v. Kaseman,* 1978, S.D., 273 N.W.2d 716; *State v. Gerber,* 1976, S.D., 241 N.W.2d 720; *State v. Haron,* 1974, 88 S.D. 397, 220 N.W.2d 829; *United States v. Ventresca,* 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. The resolution of a marginal showing of probable cause on an affidavit should be largely determined by the preference to be accorded to warrants. *State v. Kaseman,* supra; *State v. Kietzke,* 1971, 85 S.D. 502, 186 N.W.2d 551. Accordingly, every reasonable inference possible should be drawn in order to support the determination of probable cause by the magistrate. *State v. Kaseman,* supra; *State v. Glidden,* 1976, S.D., 246 N.W.2d 779. See also, *Spinelli v. United States,* 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. There need not be a prima facie showing of legal evidence of a suspected act. The standard of probable cause for the issuance of a search warrant is a showing of probability of criminal activity. *State v. Kaseman,* supra.

The affidavit upon which the magistrate issued the search warrant was the sworn statement of a Sioux Falls detective. The affidavit contained the following information: that the Sioux Falls Police Department Narcotics Division had the defendants under periodic surveillance for drug trafficking since at least January of 1977; that both defendants were identified as being the occupants of the rented house at 3726 North Seventh Avenue in Sioux Falls; that defendant Hastings had been on juvenile probation for drug using and dealing; that the defendants' neighbors had complained about the large number of individuals coming and going at the residence; that Isonhood had been arrested on July 20, 1977, on a felony drug charge; that Isonhood had been distributing drugs, including cocaine, marijuana and speed, in the Sioux Falls area for about six months; that Isonhood purchased a "wide variety of drugs on numerous occasions in excess of twenty" from the defendants at their residence; that Isonhood purchased several grams of cocaine the evening before his arrest from defendant Hastings and there was more cocaine in the refrigerator and a pound of marijuana in a desk drawer; that Isonhood had been involved in setting up a contact for the defendants with a trucker bringing in drugs by truck and utilizing a rented car in Sioux Falls; that the affiant observed this operation in action and arrested the trucker allegedly supplying drugs to the defendants at their residence address.

The defendants would have us read the affidavit in a critical, hypertechnical manner to arrive at the conclusion that there is no showing of probable cause for the issuance of the search warrant. This we will not do. The affidavit places the defendants

---

**3.** Article IV of the Bill of Rights in the United States Constitution states that

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The South Dakota Constitution Bills of Rights, Article VI, Section 11 guarantees that

"[t]he right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized."

in the residence to be searched, the residence had been under surveillance for months for suspected drug activity, an individual personally observed drugs in the house and purchased such drugs, and the individual further provided information on the drug-running operation to the defendants' residence which resulted in an arrest. We are convinced that the magistrate was informed of some of the underlying circumstances from which the affiant and informant concluded that there were controlled substances at the defendants' residence and from which the affiant concluded that the informant's information was reliable. *United States v. Harris,* 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *Spinelli v. United States,* supra; *Aguilar v. Texas,* 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. See, *People v. Bolender,* 1974, 24 Ill. App.3d 804, 322 N.E.2d 624. With this information, the magistrate properly concluded that there was a showing of probability of criminal activity sufficient for the issuance of a search warrant for the defendants' residence. Therefore, the trial court did not err in denying the motions to suppress and in admitting the fruits of the search into evidence on the basis of lack of probable cause.

The defendants next contend that the trial court erred in denying their motions to suppress and in admitting the fruits of the search into evidence for the reason that the search warrant did not particularly describe what was to be seized.[4] The body of the search warrant reads as follows:

"Proof by Affidavit, having been this day made before me by Eugene Corbett, that there is probable cause for believing that the said MIKE HASTINGS and DICK CLARK, defendants above named, committed felonies, to-wit: Possession of a Controlled Substance with Intent to Distribute.

"YOU ARE THEREFORE COMMANDED, at any time of the day or night, to make immediate search of a residence at 3726 North Seventh Avenue, Sioux Falls, Minnehaha County, South Dakota, and seize any and all substances controlled by SDCL 39–17, and if you find the same or any part thereof, to bring it forthwith before me in the Courtroom, City Hall, Sioux Falls, Minnehaha County, South Dakota."

The defendants point to the language "any and all substances controlled by SDCL 39–17" as not particularly describing the thing to be searched and seized. The defendants contend that this constitutes an impermissibly general warrant.

The long history of the use of general warrants is largely a history of conflict between the British Crown and the press. During the time of enforcement of laws licensing the publication of literature and of prosecutions for seditious libel, general warrants were systematically issued giving officers of the Crown roving commissions to suppress and destroy the literature of dissent and the publication of libel. *Stanford v. Texas,* 1965, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431. The basic problem regarding general warrants was not the intrusion per se, but the general, exploratory rummaging through one's personal belongings. *Andresen v. Maryland,* 1976, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627; *Coolidge v. New Hampshire,* 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. It is out of this historical context that the Bill of Rights[5] restrictions on the power of search and seizure were fashioned.

Regarding the restriction of particularity in the search warrant, such restriction should be given a reasonable interpretation commensurate with the type of property sought to be seized. Descriptions may vary depending on the nature of the thing to be seized and must be specific to the extent that the circumstances will allow. 79 C.J.S. Searches and Seizures § 81, p. 895; 68 Am.Jur.2d, Searches and Seizures, § 81, p. 736.

"If the purpose of the search is to find a specific item of property, it should be so

---

4. See note 3, supra, for the particularity requirement which is constitutionally mandated.

5. See note 3, supra.

particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character." *People v. Schmidt,* 1970, 172 Colo. 285, 473 P.2d 698, 700.

We can therefore conclude that a lesser standard of particularity of description is required in search warrants involving contraband or inherently illicit property.[6] A suggested test of the existence of the requisite particularity is whether the warrant places a meaningful restriction on the objects to be seized. *People v. McEwen,* 1966, 244 Cal.App.2d 534, 53 Cal.Rptr. 362. In any analysis, the standard of particularity requires that the officer executing the warrant does not have any discretion with regard to what is to be seized. *Andresen v. Maryland,* supra; *Stanford v. Texas,* supra; *Marron v. United States,* 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231.

The defendants rely on *State v. Nelson,* 1969, 84 S.D. 218, 169 N.W.2d 533, and suggest that it controls the present case. In *Nelson,* the court held that a search warrant authorizing officers to seize " 'any evidence in connection with the violation of SDC 13.3703 [the third-degree burglary statute], or otherwise' " did not describe anything with reasonable particularity thereby rendering the warrant void and the resulting search and seizure unreasonable. The *Nelson* warrant left what was to be seized to the sole discretion of the officer executing the warrant. This is certainly distinguishable from the present case. The warrant informed the executing officers that the magistrate found probable cause for believing that the defendants committed felonies of possession of controlled sub-

stances with intent to distribute and ordered the officers to immediately search the defendants' residence and seize "any and all substances controlled by SDCL 39–17." By definition at SDCL 39–17–46, the term "controlled substances" is confined to four schedules that expressly list chemical substances. Officers executing the warrant were not left to exercise discretion with regard to what was to be seized; they were to seize any substance which is expressly listed on the four schedules in SDCL 39–17. This distinguishes the present case from the *Nelson* case, and therefore *Nelson* is not controlling here.

██ The defendants argue that in evaluating the search warrant's particularity, the warrant description be read in conjunction with the information available from the supporting affidavit. The defendants suggest that the test should be that the warrant reasonably conform, in degree of specificity, with the supporting affidavit. We stated in *Kaseman,* supra, that the implication arises from a finding of probable cause for the issuance of a warrant

"that there is a violation in respect to some property located on some premises, or on some person, which can be identified expressly or by reasonable inference from the information given in the affidavit so as to be capable of being particularly described in the warrant." 273 N.W.2d 716.

In this regard, the affidavit contained information that drug trafficking was involved, that there had been an arrest on a felony drug charge, that the informant distributed drugs, including cocaine, marijuana, and speed, that the informant purchased "a wide variety of drugs" on many occasions, that the informant purchased cocaine and saw marijuana the evening before his arrest, and that a trucker was supplying drugs to the defendants. Although specific controlled substances were referred to by

---

**6.** See *United States v. DePugh,* 1971, 10 Cir., 452 F.2d 915, 920. When the "things" to be seized are not by nature contraband (e.g., books and documents along with the ideas they contain), the constitutional requirement of par-

ticularity in description "is to be accorded the most scrupulous exactitude * * *." *Stanford v. Texas,* supra, 379 U.S. at 485, 85 S.Ct. at 511, 13 L.Ed.2d at 437. See also, *United States v. Burch,* 1977, D.C.Del., 432 F.Supp. 961.

name, the terms "drugs" and "wide variety of drugs" were also used. We conclude that under the circumstances presented in this affidavit, the use of the language "any and all substances controlled by SDCL 39-17" in the search warrant reasonably conforms to the information in the supporting affidavit.[7]

Taking into consideration the inherent nature and character of the property involved, we hold that the search warrant described with reasonable particularity what was to be seized. There was no room for the exercise of discretion on the part of the officers executing the warrant, and therefore the warrant was within the constitutionally mandated particularity requirement.[8] Accordingly, the trial court did not err in denying the defendants' motions to suppress and in admitting the fruits of the search into evidence on the basis of lack of particularity in description.

We have considered the defendants' remaining contentions based upon their assignments of error and find them to be without merit.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

I agree with the majority that the affidavit in support of the search warrant was sufficient to meet the requirement of probable cause. In my opinion, however, the language embodied in the search warrant to "seize any and all substances controlled by SDCL 39-17" verges upon the classification of an "open-ended" search warrant, which normally would not pass constitutional muster. *Lo-Ji Sales, Inc. v. New York,* —— U.S. ——, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). The majority opinion, however, cites numerous authorities to the effect that property, which by reason of its character is inherently illicit or

---

**7.** Especially regarding this type of contraband, there is presumably no difference between the search warrant citing SDCL 39-17 which lists the controlled substances as opposed to specifically enumerating the substances on the search warrant itself as they are listed on the schedules in SDCL 39-17. As a practical matter, even if the warrant had specifically ordered the officers to seize marijuana and the officers inadvertently found cocaine, hash oil, and amphetamines as well as marijuana, they would be justified in seizing the contraband not listed in the warrant pursuant to the dictates of *State v. Larkin,* 1972, 87 S.D. 61, 202 N.W.2d 862. In *Larkin,* we stated the exception to the general rule that where an officer while in the course of a lawful search pursuant to a valid search warrant inadvertently uncovers evidence of another crime, the officer may seize the evidence although it is not described in the warrant if the original search was directed in good faith toward finding the objects described in the search warrant and if the officer has probable cause to believe the inadvertently discovered evidence is in fact seizable. See also, *State v. Watkins,* 1975, S.D., 237 N.W.2d 14; *State v. Van Beek,* 1973, 88 S.D. 154, 212 N.W.2d 659.

**8.** Other jurisdictions have also upheld the seizure of controlled or dangerous substances authorized by warrants containing similar statutory references. See, e. g., *State v. Hamilton,* 1975, Iowa, 236 N.W.2d 325, 326 ("hashish, a Schedule I controlled substance, and any and all controlled substances as defined in [Chapter] 204 of the 1973 Code of Iowa"); *State v. Christow,* 1977, 147 N.J.Super. 258, 371 A.2d 108 ("in violation of the criminal laws of the State of New Jersey, more particularly those relating to The New Jersey Controlled Dangerous Substance Act, specifically 24:21-20(a1) and 24:21-20(a4)"); *State v. Wiley,* 1973, 295 Minn. 411, 205 N.W.2d 667, 672 ("narcotic drugs and dangerous drugs including marijuana, LSD, amphetamines and barbiturates"); *State v. Salinas,* 1977, 18 Wash.App. 455, 569 P.2d 75 ("controlled substances(s) known as scheduled and legend drugs"); *State v. Quintana,* 1975, 87 N.M. 414, 534 P.2d 1126, 1128 ("any and all controlled substances which may be kept there contrary to law"); *People v. Schmidt,* 1970, 172 Colo. 285, 473 P.2d 698, 699-700 ("Marijuana, (Cannabis Sativa L.) Dangerous Drugs, Stimulant Drugs, and Hallucinogenics, as defined in House Bill # 1021 as enacted by the General Assembly of the State of Colorado"). See also, *People v. McGill,* 1974, 187 Colo. 65, 528 P.2d 386, 388; *People v. Leahy,* 1970, 173 Colo. 339, 484 P.2d 778, 781.

contraband, is excepted from the general standards that search warrants must particularly describe the property to be seized. In those instances, the test of requisite particularity suggested by the majority opinion is whether the warrant places a meaningful restriction on the objects to be seized. The majority concludes that since controlled substances pursuant to SDCL 39–17–46 are confined to four schedules that expressly list such chemical substances, the officers executing the warrant were not left to exercise discretion with regard to what was to be seized; their search was limited, according to the majority, only to those substances listed on the four schedules.

It must be pointed out, however, that the search warrant did not allude specifically to section SDCL 39–17–46 which defines "controlled" substances. May I point out that certain substances set forth in Schedule III (see SDCL 39–17–63) are, in certain forms, exempted by SDCL 39–17–64. Furthermore, the entire statutory scheme of chapter SDCL 39–17 is fraught with exceptions and uncertainty including the provision of SDCL 39–17–69, which provides for the addition, deletion, or rescheduling of scheduled substances.[1]

At the time this search warrant was issued, embodied in SDCL 39–17–46[2] was a safeguard: that controlled drugs or substances as defined did not include "drugs, substances, or immediate precursors which have been deleted by the department" nor did it include "patent or proprietary medicines within the meaning of § 36–11–51 and amendments thereto." As such, reliance upon this definition only allowed officers to seize contraband, which in turn, permitted a lesser standard of particularity of description in said search warrant.

Although I concur in the result of the opinion, I would suggest that search war-

rants *expressly* state that the property to be seized is that which is defined as a controlled substance and *contrary to law,* not merely as "controlled" by ch. SDCL 39–17. Realizing that the four schedules list over one hundred and forty substances constituting controlled substances, it would be highly preferable that the search warrant also contain a description of the type of contraband to be seized, although such a listing would not be inclusive. To permit an officer to seize any substance which is "finitely" listed on the four schedules, in effect presents the officer with the problem of making a determination of the chemical analysis of controlled substances by occular perception. Considering the complexity, exceptions and technical delineations in ch. SDCL 39–17, pinpointing the scope of the search may prevent the seizing of a given drug, legal if subject to a valid prescription, critical to the health of the owner. See Presiding Judge Biegelmeier's concurring opinion in *State v. Nelson,* 84 S.D. 218, 226, 169 N.W.2d 533, 537 (1969). Allowing in this case a code pleading of "any and all substances controlled by ch. SDCL 39–17" not only could permit the seizure of necessary and legal drug items for which probable cause to search had never been shown, but could also prevent its timely return.

Considering the language of the new statute defining controlled drug or substance, which was not in effect at the inception of this case, the pleader of a search warrant should be most careful in setting forth that the items to be seized are a controlled drug or substance and contrary to law to fit within the exception, lest the search warrant be an "open-ended" one, which would not pass constitutional muster.

---

1. Control is also defined in SDCL 39–17–44(4) as a "means to add, remove, or change the placement of a drug, substance or immediate precursor under §§ 39–17–69 to 39–17–71, inclusive."

2. This section of the code has not been transferred to 34–20B. Controlled drug or sub-

stance is defined in SDCL 34–20B–3: "For the purposes of this chapter, unless the context otherwise requires, 'controlled drug or substance' means a drug, substance, or immediate precursor in Schedules I through IV of §§ 34–20B–11 to 34–20B–26, inclusive."