STATE of South Dakota, Plaintiff and Respondent,

v.

Robert L. ALEXANDER, Jr., Defendant and Appellant.

No. 12723.

Supreme Court of South Dakota.

Argued Oct. 17, 1979.

Decided Dec. 20, 1979.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

A. Thomas Pokela of Braithwaite & Cadwell, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is a criminal action in which Robert L. Alexander, Jr., was charged with, tried for, and convicted of being a felon in possession of a firearm in violation of SDCL 22–14–15. He appeals the conviction and sentence of one year in the state penitentiary. We affirm.

## FACTS

Defendant Alexander, prior to the conviction arising out of this set of facts, had been convicted of burglary. On the early morning of July 9, 1978, between 2:30 and 3:00 a. m., Officer Donald Radel, a patrolman for the Mitchell Police Department, was sitting in a marked police vehicle in the parking lot in front of the Super City Mall

in Mitchell, Davison County, South Dakota. Officer Radel was in plain clothes and on duty, having responded to a call-up for extra officers due to a burglar alarm that had gone off and a door being found open at Super City Mall. A deputy sheriff of Davison County was with him. From where these officers were positioned, it was two hundred to three hundred feet to the Country Kitchen. Between the Country Kitchen and the Super City Mall, there was an intervening parking lot. A pickup approached from the direction of the Country Kitchen. It contained a man and woman, both unidentified. Officer Radel walked to meet the approaching vehicle which stopped. The man told Officer Radel that he did not know if it was connected to what the officers were doing, but as they, the occupants of the pickup, had walked out of the Country Kitchen to their pickup, they saw two men standing by a parked car and one of them was carrying a gun. The male informant told the officers that the man carrying the gun had been called "Bob," and that he was wearing the gun "in front of him." He thought it was a handgun. The informant then pointed out the two men to Officer Radel. The Country Kitchen parking lot was well-lighted, and Officer Radel noticed with particularity both men's clothing. The pickup then drove off. Shortly thereafter, Officer Radel observed the two men walk into the Country Kitchen.

While Officer Radel was observing these two men and talking to the two unidentified informants, other officers were searching the building where the alarm had gone off. Officer Feldman, who was one of the officers in the building investigating the burglary, walked out of the building and was informed by Officer Radel of the on-the-site "tip." Officers were then deployed around the Country Kitchen so that the two men could be investigated and could not get away. Officer Radel entered the Country Kitchen and notified the manager that the officers were going to check out the two individuals who had been seen entering the restaurant. Officer Radel spotted the two sitting in a booth and waived the other

officers to come in. When Officer Feldman entered, he recognized defendant as having been previously convicted of burglary. Five people were sitting in the booth. The officers asked all five to go outside; three then complied, but two, including defendant, did not. Defendant became loud and belligerent. As defendant attempted to rise, the officers saw a gun on the seat of the booth. Officer Feldman seized the gun and defendant's arm. The gun was within a fraction of an inch of defendant's left hand and ten inches separated the gun from the other male on that side of the booth. The defendant was then frisked outside and was found wearing a gun holster in the waistband of his trousers. The gun was loaded with six cartridges and other cartridges were found in the defendant's pocket.

## ISSUES

1. Was the "stop" of Robert L. Alexander, Jr., done in a constitutional manner so as to justify a resulting search and seizure? We hold that it was.

2. Was the court in error in finding that the defendant had previously been convicted of a crime of violence, i. e., burglary, in view of the facts adduced at trial? We hold that it was not in error.

3. Was the court in error in finding the defendant guilty of possession of the weapon? We hold that the court was not in error.

## DECISION

### I.

We have held that information supplied by victims of a crime or by citizen eyewitnesses is subjected to less rigorous examination than information supplied by paid informants. *State v. Roth,* 269 N.W.2d 808 (S.D.1978), *State v. Gerber,* 241 N.W.2d 720 (S.D.1976), and *State v. Haron,* 88 S.D. 397, 220 N.W.2d 829 (1974).

In *State v. Haron,* supra, this court stated:

We agree with the holding in *United States v. Bell,* [457 F.2d 1231 (5th Cir. 1972)], that the strict requirements of *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723] and *Spinelli* [*v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637] are limited to those cases in which the information in the affidavit has been supplied by an unnamed, unidentified informant and that where, as in the instant case, the information, or at least the greater part of it, has been supplied by the victim of the alleged crime or by identified eyewitnesses, the reliability of the information so supplied and the credibility of the informants are sufficiently established if on the face of the affidavit it appears that the named victim-eyewitness informants were in a position to have observed the matters related to the officer who submits the affidavit to the magistrate.

88 S.D. at 402, 220 N.W.2d at 832. We recently approved this language in *State v. Weiker*, 279 N.W.2d 683 (S.D.1979).

The informants in this case were citizen eyewitnesses at the scene within the presence of the officer who conjointly witnessed the facts as they were developing. There is nothing to suggest that the information or their credibility was unreliable. Like in *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972): "The informant here came forward personally to give information that was immediately verifiable at the scene." Also, in *Adams v. Williams*, supra, citing *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 908 (1968), the United States Supreme Court stated: "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. Id., 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617.

■ Several factors lead us to conclude that the officer's request to go outside was a reasonable "stop." A burglary investigation was being conducted at the Super City Mall which was within three hundred feet of the "stop" by the officers. The information was given by an apparently concerned individual with some knowledge of the surrounding circumstances. A legal assumption exists, based on case law, that an ordinary citizen is expected to be motivated by factors which are consistent with law enforcement goals. *See State v. Lakomy*, 126 N.J.Super. 430, 315 A.2d 46 (1974). Sgt. Feldman recognized the defendant, knowing him to have been convicted of burglary. Defendant acted belligerently, and the officers observed a firearm within a fraction of an inch from his hand. The officers followed accepted police procedure by minimizing the danger to the fifty or sixty persons in the Country Kitchen. The prompt response of the law enforcement officers in Davison County was eminently constitutional and admirable in protecting the general citizenry. They had every right to reasonably believe that they were dealing with an armed and dangerous felon who posed a present threat to themselves and the patrons of the restaurant.

## II.

The defendant contends that his conviction cannot be upheld under SDCL 22–14–15, in that the state failed to demonstrate that his prior conviction of third-degree burglary involved acts of violence.

■ This court has previously addressed itself to the question of whether third-degree burglary is a crime of violence within the meaning of SDCL 23–7–1 * in the case of *State v. Vigna*, 260 N.W.2d 506, 508 (S.D.1977).

We do not believe, however, that the legislature intended that the state be required to prove as an element of the offense defined by SDCL 23–7–3 the fact that the underlying offense of burglary was committed in a violent manner. Rather, it seems obvious from a reading of SDCL 23–7–1 that the legislature determined that persons who have committed any of those crimes enumerated therein present such a potential hazard to the public safety that their possession of handguns should be flatly prohibited regardless of the circumstances under which those enumerated crimes were committed.

* A crime of violence is defined in SDCL 22–1–2(8) which includes burglary.

We find no reason to deviate from this position.

### III.

We hold that the defendant was in possession of the firearm under the facts and circumstances of this case, particularly, the firearm was found in the booth just a fraction of an inch away from defendant's left hand. Defendant had immediate access to a loaded firearm. To protect the safety of the patrons of the Country Kitchen, defendant was taken outside, reasonably frisked, and found with a gun holster and six cartridges on his person. Possession is defined as having control over a place or thing with knowledge of and the intent to have such control. The possession does not have to be actual, physical possession on one's person. *See State v. Hoskins,* 222 Kan. 436, 565 P.2d 608 (1977).

Accordingly, the conviction is affirmed.

All the Justices concur.