STATE of South Dakota, Plaintiff
and Appellee,

v.

Douglas M. HABBENA, Defendant
and Appellant.

No. 14432.

Supreme Court of South Dakota.

Argued Sept. 12, 1984.

Decided July 31, 1985.

Steve Miller, Sp. Deputy State's Atty., Sioux Falls, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, and Joaquin K. Hanson, Minnehaha County State's Atty., Sioux Falls, on brief.

James E. McCulloch of Minick, Nelson & McCulloch, Vermillion, for defendant and appellant.

MORGAN, Justice.

This appeal arises from the conviction of Douglas Habbena · (Habbena) on two counts: (1) distribution of a controlled substance (cocaine), in violation of SDCL 22–42–2; and (2) possession of a controlled substance (cocaine) with intent to distribute, in violation of SDCL 22–42–2. Habbena appeals the trial court's denial of certain portions of his motion to suppress evidence and the use of suppressed evidence at his sentencing hearing. We affirm.

In February of 1983, the Sioux Falls Police Department (Department) was in the process of an undercover investigation into cocaine sales. The purpose of this investigation was to arrest the supplier of one of the Department's contacts. In anticipation of an undercover cocaine purchase, officials of Department, along with the South Dakota Division of Criminal Investigation (DCI) and the federal Drug Enforcement Agency (DEA), met to discuss contingencies surrounding the anticipated buy. At this February 13, 1983, meeting, it was decided, after one officer sought the advice of a Minnehaha County Deputy State's Attorney, that if the officers knew that state money used to buy cocaine was in a particular residence, the officers should surveil the residence and seek a search warrant. The officers were also told that should someone leave the surveilled residence, prior to the arrival of the search warrant, that person should be stopped and returned to the residence and the officers should enter the residence and preserve the status quo pending arrival of the search warrant.

The evening of February 14, 1983, State Agent Duane Dahl (Dahl) met with Tim Reinius (Reinius) at a Department informant's house to arrange for a purchase of cocaine. Dahl gave Reinius $1,100 in "marked buy money" to obtain the cocaine. Reinius left and went to his own home. Approximately one hour later, Paul Gabrielson (Gabrielson) arrived at Reinius'

house. Gabrielson left Reinius' house and proceeded to another residence in Sioux Falls. He was followed by police officers. Gabrielson remained inside for about ten minutes and then left, driving back to Reinius' house. Detective Conrad Smith (Smith) remained to surveil the residence Gabrielson had entered and left. At no time prior to Gabrielson entering the residence did the police have reason to connect this home or its occupants with drug-related offenses. Following Gabrielson's return, Reinius called Dahl and told him he had the cocaine. Gabrielson left Reinius' home and was stopped a few blocks later by Sioux Falls Police Sergeant Hoier (Hoier). Smith left his surveillance of the residence for approximately five to ten minutes to assist Hoier. Gabrielson was driven past the surveilled residence, and pointed it out as where he had left the "buy money" and obtained cocaine. Gabrielson was then taken to the Public Safety Building. Subsequently, Reinius was arrested as he delivered the cocaine to Dahl.

At this point, the residence, later identified as Habbena's, was under surveillance by Smith and three others. A lone male entered the home and, approximately fifteen minutes later, left. Pursuant to plan, Smith and Federal Agent Edwards, along with two uniformed officers, entered to "secure" the premises *pending* arrival of a search warrant. Smith and Edwards performed a cursory search for other occupants while the uniformed officers remained with Habbena. Smith also used the telephone in an upstairs bedroom to contact Police Detective Boos (Boos) who was in the process of preparing an affidavit in anticipation of securing a search warrant. At this time, Smith saw marijuana in an open shoe box lid on top of a television. Following his short conversation with Smith, Boos called Magistrate Judge Matheson to obtain a telephonic search warrant, pursuant to SDCL 23A–35–5, –6.[1]

---

1. SDCL 23A–35–5 provides:
   When circumstances make it reasonable to do so in the absence of a written affidavit, a search warrant may be issued upon sworn oral testimo-

ny of a person who is not in the physical presence of a committing magistrate if the committing magistrate is satisfied that probable cause exists for the issuance of the warrant. The

Upon information relayed to him by Hoier, Boos told Magistrate Matheson that cocaine had been purchased that evening by Dahl and that Gabrielson, who was in custody, had delivered the money to a residence in Sioux Falls, 626 South Prairie Avenue. Boos further stated that Gabrielson had seen cocaine in the residence and that the occupant was believed to be Dale Callies. Magistrate Matheson was also told that officers were in the residence holding persons until a warrant could be obtained. Boos asked for permission to search for controlled substances, cocaine, and the $1,100 in buy money, the warrant to be executed immediately. Magistrate Matheson authorized the warrant and Boos prepared a duplicate original search warrant, signing Matheson's name to it, with his name below that. Approximately forty-five minutes after the initial entry, Boos arrived at the residence and gave Habbena a copy of the warrant and explained its purpose.

During the execution of the warrant, nineteen different items or groups of items were seized. Along with cocaine and the "buy money," ledger books, hashish, marijuana, various pills and tablets and other drug paraphernalia were seized.

Habbena was indicted by the Minnehaha County Grand Jury on February 17, 1983. On March 25, 1983, Habbena filed a motion to suppress evidence, claiming that the initial securing of his premises constituted an illegal entry into his home, and all evidence obtained thereafter was so tainted by this illegal seizure that it should be suppressed. A hearing was held on the motion before the trial court. After this hearing, the trial court found that the initial securing procedure was a violation of Habbena's Fourth Amendment rights, and suppressed a statement made to the officers before the arrival of the warrant, along with marijuana actually seen by the officers during the securing procedure.[2] The trial court noted, however, that the evidence seized under the search warrant was the product of an independent source (the search warrant) and was therefore admissible. The trial court also found that the telephonic search warrant, although it did not comply with the letter of the statute (SDCL 23A–35–6), was in substantial compliance with the statute and, therefore, was a valid independent source for the items seized.

█ As to the failure to suppress all of the evidence, Habbena initially contends that the trial court erred in that the seizure of himself and his residence was a seizure of the entire contents of his home. It is clear that both the Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution apply to unreasonable seizures, as well as searches.[3] It is, however, the unreasonableness of the seizure which involves constitutional prohibitions.

sworn oral testimony may be communicated to the magistrate by telephone or other appropriate means and shall be recorded and transcribed. After transcription the statement must be certified by the magistrate and filed with the court. This statement shall be deemed to be an affidavit for purposes of § 23A–35–4.

SDCL 23A–35–6 provides:

The grounds for issuance and the contents of a warrant issued pursuant to § 23A–35–5 shall be the same as are required by § 23A–35–4. Prior to approval of a warrant issued pursuant to § 23A–35–5, the committing magistrate shall require the law enforcement officer or the prosecuting attorney who is requesting the warrant to read to him verbatim the contents of the warrant. The magistrate may direct that specific modifications be made in the warrant. Upon approval, the magistrate shall direct the law enforcement officer or the prosecuting attorney who is requesting the warrant to sign the magistrate's name on the warrant. This warrant shall be called a duplicate original warrant and is a warrant for purposes of this chapter. In such cases, the magistrate shall have an original warrant made. The magistrate shall enter the exact time of issuance of the duplicate original warrant on the face of the original warrant.

2. The State does not seek review of this ruling.

3. S.D. Const. art. VI, § 11, reads:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

After the suppression hearing, the trial court found, in substance:

(14) The officers entered the house at about 8:34 p.m., identified themselves as police officers and announced that they were going to "secure" the house pending the arrival of a search warrant.

(15) Two of the officers performed a cursory search of the house for other occupants. The search included an upstairs bedroom where nearly all of the evidence was later discovered. They returned downstairs and remained in the living room.

(16) Smith later returned to the upstairs bedroom, the location of the only telephone in the house, to call the station to confirm the address. At that time he saw and reported some suspected marijuana in a shoe box top on open display in the bedroom.

. . . .

(19) Two uniformed officers also were in the residence for a very brief period that played no significant roll in the securing procedure.

(20) Except for the initial cursory search and the telephone call no law enforcement officers went upstairs until after the warrant arrived. No search for evidence was conducted until the warrant arrived and none of the evidence eventually seized was seen by any law enforcement officer until the warrant arrived except the marijuana in the shoebox lid previously referred to.

Based on these findings of fact, the trial court concluded as a matter of law, in substance:

(1) That there was probable cause to arrest defendant.

(2) To search the residence for cocaine and the marked buy money at the time the residence was entered.

(3) That the entry and defendant's resulting restricted freedom of movement constituted an arrest under the Fourth Amendment and Article VI,

§ 11 of the South Dakota Constitution, but no exigent circumstances existed which would authorize the warrantless entry to "secure" the premises.

(8) The "securing" procedure did not constitute a "seizure" in the constitutional sense of all the contents of the house.

(9) The marijuana seen by the police during the "securing" procedure before the arrival of the warrant was seized in the constitutional sense and should be suppressed.

(10) All other items seized during the execution of the search warrant are the fruits of an independent source—the search warrant—and are untainted by the illegal "securing" procedure.

■ This court will disturb the trial court's findings of fact only if the evidence preponderates against them. The findings of the trial court must stand if there is substantial evidence to support them. *Halverson v. State*, 356 N.W.2d 484 (S.D.1984); *Brim v. State*, 290 N.W.2d 680 (S.D.1980).

Habbena seems to contend that, inasmuch as the trial court found the entry to secure the premises illegal for lack of exigent circumstances and suppressed a statement made by defendant to the officers and suppressed the marijuana seen before the arrival of the search warrant, the balance of the evidence seized should likewise be suppressed under the fruit of the poisonous tree doctrine delineated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Habbena strongly urges that the subsequently acquired search warrant does not satisfy the independent source test enunciated in *Wong Sun*, wherein the United States Supreme Court stated that the test to determine whether evidence is tainted is:

"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distin-

guishable to be purged of the primary taint."

371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455 (citation omitted).

The independent source rule was first enunciated by the United States Supreme Court in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Justice Holmes noted that normally the Fourth Amendment precludes the admission of illegally obtained evidence, but that "[i]f knowledge of them (the facts surrounding the seizure of evidence) is gained from an independent source they may be proved like any others[.]" 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed. at 321.

South Dakota has also adopted the independent source rule. *See State v. Wilson*, 322 N.W.2d 866 (S.D.1980); *State v. Pierson*, 248 N.W.2d 48 (S.D.1976). As such, the doctrine applies to Habbena's claims under S.D. Const. art. VI, § 11. While the trial court found that the initial warrantless entry was unconstitutional, it also found that none of the subsequently admitted evidentiary items were the products of this initial illegal entry, but rather were the fruits of an independent source, the search warrant.

The next question is whether the search warrant constituted a valid independent source. The only information in the warrant application that Habbena points to as information resulting from the securing procedure was the statement to the magistrate that the officers had secured the house. The trial court found that with that information excised the telephonic affidavit was sufficient to provide probable cause for issuance of the search warrant, including authorization for seizure of the currency, the cocaine, and controlled substances. The Court of Appeals for the Eighth Circuit, in *United States v. Williams*, 633 F.2d 742 (8th Cir.1980), noted that "when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, '[if] the lawfully obtained information amounts to probable cause and would have justified issuance of

the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.'" 633 F.2d at 745 (citation omitted). *See State v. Hibbard*, 273 N.W.2d 172 (S.D.1978).

■ Both parties cite us to the decision of the United States Supreme Court, *Segura et al. v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), wherein the majority upheld the admission of evidence seized in execution of a search warrant issued some twenty hours after the act of securing the apartment of a drug dealer. We find the decision to be of little precedental value. The five to four majority opinion, written by Chief Justice Burger, would seem to dispose effectively of Habbena's argument that the securing procedure was a seizure of the evidence seized in the execution of the dilatory warrant and for which suppression was sought. The opinion holds that under the totality of the circumstances the seizure was not an unreasonable one as contemplated by the constitutional prohibition. Possessory rights protected against unreasonable seizure were distinguished from privacy rights protected against unreasonable search and were downgraded. It is noteworthy that in this part of the decision the Chief Justice was joined only by Justice O'Connor. A strong dissent authored by Justice Stevens literally shredded the Chief Justice's arguments and would be far more persuasive to us in this case were the cases not so clearly distinguishable. Aside from the lapse of only forty-five minutes between the securing and the delivery of the warrant in this case, as compared to some twenty hours in *Segura*, the evidence in this case shows that the preparation of the affidavit was commenced prior to the securing and the information as to the address and the fact that the buy money and additional cocaine were present in the house was obtained from a third person outside the house and prior to the entry; whereas, in *Segura*, it is apparent that the warrant application, prepared after Segura and his accomplices were arrested, booked and jailed, relied to some extent on the observation by the offi-

cers of drug paraphernalia in plain view on the premises that had been secured. The trial court below did suppress such evidence as was in plain view during the securing procedure and denied suppression of the balance of the evidence seized in the execution of the warrant. *See State v. Wilson*, 322 N.W.2d 866 (S.D.1982); *State v. Pierson*, 248 N.W.2d 48 (S.D.1976). As such, the doctrine applies to Habbena's claims under S.D. Const. art VI, § 11. We agree that the search warrant arose from an independent source of information and we now examine Habbena's contention that the warrant was otherwise invalid.

■ Habbena contends the incorrect identification of "Dale Callies" as the occupant of the house in the warrant is grounds to invalidate the warrant. Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a two-part analysis is necessary before a false statement in a warrant affidavit will void the search warrant. *See Hibbard*, 273 N.W.2d at 176. First, the defendant must show by a preponderance of the evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. Second, the allegedly false statement must be necessary to the finding of probable cause. *Hibbard, supra, citing Franks, supra.* Neither portion of the *Franks* test is met here. The trial court found that the name Dale Callies was negligently added to the affidavit, upon information reasonably believed by Boos. Secondly, the trial court found the necessary probable cause even with the false statement excised. In determining a probable cause challenge, this court draws every reasonable inference possible in support of the magistrate's determination. *State v. Wellner*, 318 N.W.2d 324, 327 (S.D.1982). As such, when a magistrate has found probable cause, we will not read the warrant affidavit in a hypertechnical manner; rather, we read each affidavit as a whole and interpret each in a common sense and realistic manner. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Kaseman*, 273 N.W.2d 716 (S.D.1978); *State v. Gerber*, 90 S.D. 432, 241 N.W.2d 720 (1976); *State v. Haron*, 88 S.D. 397, 220 N.W.2d 829 (1974); *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971). Habbena does not point to any particular prejudice resulting from the misinformation; accordingly, the inclusion of the reference to "Dale Callies" in the affidavit does not render the search warrant invalid.

■ Habbena also argues that the warrant fails because of a lack of particularity in describing the items to be seized. Both the Fourth Amendment to the United States Constitution and its corresponding state provision (S.D. Const. art. VI, § 11) require particularity to avoid the "general, exploratory rummaging through one's personal belongings." *State v. Clark*, 281 N.W.2d 412, 415 (S.D.1979), *citing Andersen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As we noted in *Clark, supra,* the "test of the existence of requisite particularity is whether the warrant places a meaningful restriction on the objects to be seized." 281 N.W.2d at 416 (citations omitted). Boos requested a warrant to search for "$1100 of South Dakota State Drug Enforcement Unit money, cash, which serial numbers have been recorded, and cocaine." Earlier, in his conversation with Matheson, Boos stated that he also intended to search for "contraband, to wit: controlled substances, evidence of the commission of a crime[.]" It is unclear as to whether contraband and controlled substances were explicitly authorized to be included in the telephonic search warrant by Magistrate Matheson. In any event, at the very least, a search for the $1,100 in cash and cocaine was authorized. The cash was found in a ledger book, which was later admitted into evidence at trial. We read Habbena's argument to state that since the ledger book was not expressly authorized on the warrant its admission into evidence at trial was in error. It is clear, however, that "[w]hen a logical nexus exists between seized but unnamed

items and those items listed in the warrant, the unnamed items are admissible." *United States v. Gentry*, 642 F.2d 385, 387 (10th Cir.1981); *see also United States v. Williams*, 623 F.2d 535 (8th Cir.) *cert. denied* 449 U.S. 954, 101 S.Ct. 359, 66 L.Ed.2d 218 (1980). Here, officers were searching for the "buy money," a logical place for which would be a ledger book. Generally, when a search is pursuant to a warrant, the officer making the search cannot seize property other than that which is described in the warrant. *Wellner, supra; State v. Watkins*, 89 S.D. 661, 237 N.W.2d 14 (1975); *State v. Van Beek*, 87 S.D. 598, 212 N.W.2d 659 (1973); *State v. Larkin*, 87 S.D. 61, 202 N.W.2d 862 (1972). One exception arises when an officer, while in the course of a lawful search pursuant to a valid search warrant, inadvertently uncovers evidence of another crime. *Wellner, supra; Larkin, supra.* Under *Wellner,* the ledger book was clearly admissible since it was in plain view and the officer was acting in good faith when he inadvertently discovered its contents. The book was opened to search for the "buy money." Once this was done, the officers are allowed a limited perusal to determine the relevance of the documents to criminal activity. *Wellner, supra.* Boos determined that the ledger book contained information relating to cocaine sales and properly seized the book.

■ Habbena further contends that no reasonable cause existed for execution of the search warrant at night.[4] During his call to Magistrate Matheson at 8:39 p.m., Boos requested that the warrant be executed immediately. Matheson authorized the immediate execution. The trial court found that "reasonable cause" existed for a nighttime execution. In reading an affidavit, this court draws "every reasonable inference possible in support of the magistrate's determination." *Wellner,* 318 N.W.2d at 327. The unusual nighttime service only requires the issuing authority be

convinced that such nighttime service is reasonable under the circumstances. *See United States v. Gibbons,* 607 F.2d 1320 (10th Cir.1979). Nighttime execution of a search warrant is the exception, not the rule. A statutory rule preferring daytime execution is designed to prevent a surprise midnight invasion of a defendant's home. *See State v. Lien,* 265 N.W.2d 833 (Minn. 1978). But when the need for protection against surprise is not present, nighttime service may be necessary to insure a safe and successful search. Due to the transient nature of the items sought here, both the magistrate and the trial judge concluded that the requisite "reasonable cause" existed for nighttime service, and we agree.

■ Habbena's final contention deals with the failure of the officer to comply with SDCL 23A–35–6, which requires the committing magistrate to have the contents of the telephonic warrant read back to him prior to approval. Habbena contends that this defect is fatal and invalidates the warrant. The State admits that the "read back" requirement of SDCL 23A–35–6 was not met. Compliance with the statutes is necessary to ensure adequate judicial supervision and control to preserve constitutional guarantees. *See People v. Sanchez,* 131 Cal.App.3d 323, 182 Cal.Rptr. 430 (1982).

■ The federal courts have adopted a test in determining challenges under Fed. R.Crim.P. 41(c) (the statute upon which South Dakota's telephonic warrant statutes were patterned). Noncompliance with the statute requires suppression of evidence only where (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of an intentional and deliberate disregard of a provision in the rule. *United States v. Loyd,* 721 F.2d 331 (11th Cir. 1983); *United States v. Stefanson,* 648 F.2d 1231 (9th Cir.1981); *United States v.*

---

**4.** SDCL 23A–35–4 requires, in pertinent part: "... The warrant shall be served in the daytime, unless the committing magistrate, by appropri-

ate provision in the warrant, and for reasonable cause shown, authorizes its execution at night...."

*Gitcho*, 601 F.2d 369 (8th Cir.), *cert. denied* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). We adopt this standard.

■ Habbena cannot demonstrate he was "prejudiced" by the failure of Boos to "read back" what Matheson had authorized. In addition, we note that under SDCL 23A–35–6 it is the issuing magistrate's responsibility to require a read back of the warrant prior to approval. As such, there is no evidence that Boos intentionally and deliberately disregarded a provision of the statute. Although we do not condone such failure to abide by the dictates of the statute, "we find no prejudice from this defect in the procedures; the defect was technical and the remedy of suppression of the evidence is not justified." *Sanchez*, 131 Cal. App.3d at 330, 182 Cal.Rptr. at 434.

Since Habbena's arguments regarding the validity of the warrant fail, it then becomes an independent source for the evidence seized (*see Silverthorne, supra*) and the trial court was correct in denying Habbena's motion to suppress evidence, insofar as it relates to items seized under the valid warrant.

Habbena finally contends that the introduction of previously suppressed evidence into his sentencing hearing violates his rights under the Fourth Amendment to the United States Constitution, and Article VI, § 11 of the South Dakota Constitution. Specifically, he argues that the exclusionary rule should apply not only in the actual determination of guilt, but in the sentencing hearing as well.

■ The basic purpose of the exclusionary rule is to discourage illegal and unconstitutional acts by law enforcement officers. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Hartman*, 256 N.W.2d 131 (S.D.1977). When that deterrent aspect of the rule is not present, its use would result in a disproportionate loss of protection for society. *People v. Defore*, 242 N.Y. 13, 15 N.E. 585, *cert. denied*, 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926).

■ Other courts have held that the use of previously suppressed evidence at a sentencing hearing creates no constitutional infirmity. *United States v. Butler*, 680 F.2d 1055 (5th Cir.1982); *United States v. Larios*, 640 F.2d 938 (9th Cir.1981); *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); *State v. Swartz*, 278 N.W.2d 22 (Iowa 1979). We agree that disclosure of suppressed evidence may be admissible in a sentencing hearing. As we noted in *State v. Ellefson*, 287 N.W.2d 493 (S.D.1980), "[d]ue process does not require that the scope of information reviewed by the sentencing judge be controlled by the rules of evidence, and consideration of out-of-court information and hearsay evidence is not precluded." 287 N.W.2d at 496 (citations omitted).

This is not to say that suppressed evidence can be admitted in every sentencing hearing. Such evidence may not be admitted when it was "gathered for the express purpose of influencing the sentencing judge." *Schipani*, 435 F.2d at 28. In such a case, the deterrence policy of the exclusionary rule would clearly be implicated.

It is clear that the information admitted at Habbena's sentencing hearing was not "gathered to influence the sentencing judge." In such cases, we recognize "the broad discretion of the trial judge in determining the kind and extent of punishment to be imposed within the limits fixed by statute." *Ellefson*, 287 N.W.2d at 496; *State v. Robinson*, 87 S.D. 375, 209 N.W.2d 374 (1973).

■ Habbena was convicted on two separate counts: (1) distribution of cocaine contrary to SDCL 22–42–2, and (2) possession of cocaine with intent to distribute, contrary to SDCL 22–42–2. Cocaine is a Schedule II substance under SDCL 34–20B–16. The distribution of cocaine, or possession of with intent to distribute, is a Class 4 felony. SDCL 22–42–2. Under SDCL 22–6–1, the maximum penalty is ten years' imprisonment, plus the additional possibility of a ten thousand dollar fine. Habbena was sentenced to five years on the first count and eighteen months on the

second count, the sentences to run concurrently. Since the inclusion of suppressed evidence at the sentencing hearing was not a constitutional defect and Habbena's sentence was within statutory limits, we refuse to review the trial court's discretion in sentencing on appeal. *See State v. DuBois*, 301 N.W.2d 425 (S.D.1981).

Accordingly, the judgment of the trial court is affirmed.

FOSHEIM, C.J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

WOLLMAN, J., concurs in result.

HENDERSON, J., dissents.